UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23677-CIV-ALTONAGA/Simonton

**GERALD LELIEVE**,

    Plaintiff,

vs.

**MANUEL OROSA**, *et al.*,

    Defendants.
_____/

### ORDER

**THIS CAUSE** came before the Court on Plaintiff, Gerald Lelieve's ("Lelieve['s]") Motion to Join Parties and Amend Complaint ("Motion") [ECF No. 62], filed September 23, 2011. The Court has considered the parties' submissions and the applicable law.

### I. BACKGROUND

On October 11, 2006, Defendant, Odney Belfort ("Officer Belfort"), was conducting surveillance of a duplex known for narcotics sales. During the course of his surveillance, Officer Belfort observed Plaintiff approach the duplex. Officer Belfort then watched someone he believed to be Plaintiff purchase drugs and leave. After this observation, Officer Belfort radioed other officers a description of Plaintiff and his vehicle so the officers could stop Plaintiff and possibly arrest him. Soon thereafter, Officer Belfort was notified that other police officers had stopped Plaintiff. Officer Belfort maintains he was not present when Plaintiff was arrested, he did not observe the arrest, and he never came into physical contact with Plaintiff.

Plaintiff tells a different tale about his arrest. Lelieve alleges that during his arrest on October 11, 2006, City of Miami Police officers "repeatedly" punched him in the face and

shoved him on the ground. Once on the ground, Officer Belfort or other officers stomped his stomach repeatedly. During the stomping, other officers simply stood by and watched. Lelieve maintains that as a result, he suffered severe bodily injury and required surgery for internal bleeding. Following surgery, Plaintiff was stapled from the top of his abdomen to below his navel, has a 12-inch scar, and remained hospitalized for two weeks. Plaintiff now suffers from constant stomach pain and irritable bowel movements.

Ultimately, Lelieve was convicted of trafficking in cocaine. Later, on July 12, 2010, Plaintiff filed his Complaint in Florida state court against Officer Belfort, City of Miami Police Chief John F. Timoney, and Doe Defendants. (*See* Compl. [ECF No. 1-1]). Officer Belfort removed the case to federal court on October 12, 2010. (*See* Notice of Removal [ECF No. 1]). Officer Belfort then filed successive motions to dismiss [ECF Nos. 5, 10], both of which were denied [ECF Nos. 7, 11].

Defendant Belfort moved for summary judgment on December 8, 2010. Judge Patrick A. White issued a Report of Magistrate Judge ("Report") [ECF No. 23], recommending the summary judgment motion be denied. Judge White also recommended the case against the then-unknown Doe Defendants be dismissed.

The Court adopted the Report in part. (*See* May 5, 2011 Order [ECF No. 28]). The Court denied summary judgment as to Lelieve's excessive force claim against Officer Belfort. The Court granted Officer Belfort summary judgment with regard to Lelieve's claim under Florida Statute section 893.25(1). In addition, the Court adopted the Report to the extent it dismissed claims against John F. Timoney and the Doe Defendants. The Court did, however, grant Lelieve leave to amend his Complaint so he could provide the Doe Defendants' names.

Despite being granted leave to file an amended complaint naming the Doe Defendants,

Lelieve instead filed a "Request to Proceed with Original Complaint" ("Request") [ECF No. 29]. He stated he had been unsuccessful in obtaining the Does' true identities and wished to proceed only against Defendant Belfort. The Court granted that Request. (*See* [ECF No. 30]).

The case then proceeded to calendar call as scheduled on August 9, 2011. The day before the August 9 calendar call, the *pro se* Plaintiff obtained legal counsel. (*See* [ECF No. 36]). Counsel moved to continue the trial and extend all pretrial deadlines. (*See* [ECF No. 37]). The Court granted the motion, continuing the trial and extending all deadlines. (*See* [ECF No. 39]).

Plaintiff now seeks leave to amend his Complaint to add new parties and claims. His proposed Amended Complaint continues to assert claims against Officer Belfort and adds claims against Daniel G. Fernandez, Horace Morgan, Keith Ladunn Cunningham, Chief Manuel Oroso, and the City of Miami. (*See* Am. Compl. [ECF No. 62-1]). The Amended Complaint seeks to assert federal claims for excessive force, failure to intervene, deliberate indifference to serious medical needs, false arrest, false imprisonment, malicious prosecution, conspiracy, deliberate indifference to use of force and attention to serious medical needs, and failure to properly train and supervise under 42 U.S.C. §§ 1983 and 1985, as well as state-law claims for negligence, intentional infliction of emotional distress, and battery. Officer Belfort objects.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15, a party may amend its pleading "with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "'Ordinarily, if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, leave to amend should be freely given.'" *Cooksey v. Waters*, No. 10–14980, 2011 WL 3252566, at *2 (11th Cir. July 26, 2011) (quoting *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004)). The Court may deny leave to amend where the amendment "'would be

futile.'" *Id.* (quoting *Hall*, 367 F.3d at 1263). Denial of leave to amend "is justified by futility when the complaint as amended is still subject to dismissal." *Id.* (quoting *Hall*, 367 F.3d at 1263).

### III. ANALYSIS

Defendant Belfort opposes the Motion on several grounds, each of which is addressed below.

**A. Timeliness**

Officer Belfort first asserts that the proposed amendment is untimely. He points to Judge White's scheduling order of October 28, 2010, which initially set a deadline to amend of March 11, 2011. (*See* Mot. Opp'n 1–2 [ECF No. 66]). Officer Belfort states that Lelieve has previously filed complaints against three other named officers. (*See id.* 2). Officer Belfort maintains that Lelieve should have known of the Doe Defendants' names at an earlier time because Lelieve acknowledged the Does testified against him at his criminal trial, and Lelieve appealed his conviction. (*See id.*). According to Officer Belfort, Lelieve should have had the Does' true names because he was present at his trial and he had the trial transcripts for his appeal. (*See id.*).

Officer Belfort also states the amendment is untimely because in the May 4, 2011 Order, the Court provided Lelieve leave to amend to add the names of the Doe Defendants. (*See id.* 3). Lelieve nevertheless declined to take any discovery to determine the Does' names and chose not to amend his Complaint. (*See id.*).

While these observations are certainly true, after counsel for Lelieve appeared, on August 9, 2011, the Court set a new deadline "to amend pleadings or join parties . . . ." of September 23, 2011. (Aug. 9, 2011 Order, 1 [ECF No. 39]). Lelieve's Motion was filed on September 23, 2011. Consequently, the Motion is timely under the present scheduling order.

**B. Futility**

Officer Belfort next asserts it is futile to allow Plaintiff to amend. In support he raises two arguments, one based on the statute of limitations and one based on *Heck v. Humphrey*, 512 U.S. 477 (1994).

1. *Statute of Limitations*

Officer Belfort maintains it is futile to allow Lelieve to amend the Complaint to add new claims because the claims are time-barred. (*See* Mot. Opp'n 5). "Florida's four-year statute of limitations applies to such claims of deprivation of rights under 42 U.S.C. §§ 1983 and 1985." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). Lelieve's claims arose in 2006. Under the four-year statute of limitations, Lelieve's claims could be time-barred. Officer Belfort further contends "the motion to add additional parties should be denied based on futility of amendment because the claims against the newly identified defendants do not relate back to the initial complaint and is [sic] subject to dismissal pursuant to the four-year statute of limitations." (Mot. Opp'n 6).

The Federal Rules allow for relation back of amendments. Under Rule 15(c), there are three general ways an amendment relates back to the date of the original pleading:

> (c) Relation Back of Amendments.
>
> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
> > (A) the law that provides the applicable statute of limitations allows relation back;
> >
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading; or
> >
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B)

>>is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>
>>>(i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>
>>>(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c).

Addressing first the new claims asserted against Officer Belfort, under Rule 15(c)(1)(B) the new claims against him arose out of the conduct and occurrences set forth in the original Complaint. Officer Belfort does not assert the new claims against him are untimely. Therefore, all newly asserted claims against Defendant Belfort are timely and may be stated. Similarly, the claims asserted against Chief Manuel Orosa[1] may be asserted for the same reasons as the claims against Defendant Belfort. The Miami Police Chief was named in the original Complaint and therefore the amendments relate back.

Regarding the claims against the newly added parties, Officer Belfort asserts that under Rule 15(c)(1)(C), Plaintiff cannot replace the Does with new parties and have those claims against the new parties relate back. Replacing a Doe defendant with a named defendant "constitutes a change in the parties sued." *Wayne v. Jarvis*, 197 F.3d 1098, 1102 (11th Cir. 1999), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003). "'It is familiar law that "John Doe" pleadings cannot be used to circumvent statutes of limitations because replacing a "John Doe" with a named party in effect constitutes a change in

---

[1] The current Chief of the Miami Police Department is Manuel Orosa, not John F. Timoney. "In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office." *Kentucky v. Graham*, 473 U.S. 159, 166 n.11 (1985) (citing FED. R. CIV. P. 25(d)(1)).

the party sued.'" *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 468 (2d Cir. 1995) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)); *see also Wayne*, 197 F.3d at 1102 (citing *Barrow*, 66 F.3d at 468). Rather, "'[s]uch an amendment may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met.'" *Barrow*, 66 F.3d at 468 (quoting *Aslanidis*, 7 F.3d at 1075).

Under Rule 15(c)(1)(C), when changing a party or a party's name an amendment relates back when the correct party received notice of the action so that it will not be prejudiced, and the correct party knew or should have known that, but for a mistake concerning the correct party's identity, the action would have been brought against it. *See* FED. R. CIV. P. 15(c)(1)(C). A key requirement for relation back under Rule 15(c)(1)(C) is that the plaintiff have made a "mistake."

Lack of knowledge is not an "error, a misnomer, or a misidentification" that allows an amendment to fall within Rule 15(c)(1)(C)'s ambit. *Wayne*, 197 F.3d at 1103; *Mack v. Loizzo*, No. 08-20181-CIV, 2009 WL 4840200, at *3 (S.D. Fla. Dec. 14, 2009). Simply put, mistake does not mean "lack of knowledge." *Wayne*, 197 F.3d at 1103. "For these purposes, ignorance does not equate to misnomer or misidentification." *Id.* Therefore, Plaintiff's lack of knowledge regarding the identity of the officers, under *Wayne*, is not "a mistake concerning the identity of the proper party." *Id.* And once a court determines that no "mistake" was made, it is irrelevant whether the to-be-joined party received notice and would not be prejudiced; a finding of a mistake is necessary before moving on to the other requirements. *Id.* at 1103 n.5; *see* FED. R. CIV. P. 15(c)(1)(C).

Plaintiff nevertheless cites *Krupski v. Costa Crociere S. p. A.*, asserting that "relation back under Rule 15(c)(1)(C) depends on what the ***party to be added knew or should have known***, not on the amending party's knowledge or timeliness in seeking to amend the pleading."

7

(Reply 2 [ECF No. 69] (emphasis in original)) (citing *Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 2488 (2010)). Where Plaintiff's argument fails is that he still has not shown that he made a mistake. Even assuming for the moment that the proposed named Defendants here were aware of Lelieve's suit, there was no "mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(ii). As discussed, under *Wayne* a lack of knowledge does not constitute a mistake. *See Wayne*, 197 F.3d at 1103–04. And this holding survives *Krupski*. *See Rodriguez v. City of New York*, No. 10 Civ. 1849(PKC), 2011 WL 4344057, at *8–10 (S.D.N.Y. Sept. 7, 2011) (stating *Barrow*, on which *Wayne* relies, *see Wayne*, 197 F.3d at 1102–04, survives *Krupski*). Without a mistake, the proposed Defendants' knowledge is irrelevant.

The situation here is similar to that facing the court in *Rodriguez*. The court there found because the plaintiff lacked knowledge of the proper parties and did not "harbor a misimpression" as to their identities, *Krupski* did not control, but rather *Barrow* did:

> The situation addressed by the Court in *Krupski* is not that faced here, nor is it the situation addressed by the Second Circuit in *Barrow*. Unlike *Krupski*, the plaintiff here did not harbor a misimpression as to known parties' identities. Rather, the plaintiff did not know the identities of officers Suarez and Nozelle until after the statute of limitations had run. The plaintiff here, unlike the plaintiff in *Krupski*, did not have the requisite information to sue the correct party. Therefore, on these facts, *Krupski* does not control and *Barrow* should apply to bar plaintiff's proposed amendment.

*Rodriguez*, 2011 WL 4344057, at *9.

Like in *Rodriguez*, Lelieve asserts he did not know of the correct Defendants' identities until recently. (*See* Request 1). Thus, as in *Rodriguez*, *Wayne* and *Barrow* apply to bar Plaintiff's proposed amendment; *Krupski* does not control. *See also Demouchette v. Sheriff of Cook Cnty.*, No. 09 C 6016, 2011 WL 1378712, at *2 (N.D. Ill. Apr. 12, 2011) ("Here, however, the plaintiffs did not include the names of certain defendants because they did not know them,

8

not because there had been a mistake as to the proper party. . . . [A] lack of knowledge of the proper party is not a mistake and *Krupski* does not hold otherwise."); *Daniel v. City of Matteson*, No. 09-cv-3171, 2011 WL 198132, at *4 (N.D. Ill. Jan. 18, 2011) (finding post-*Krupski* that "[th]ere, Plaintiff [did] not claim to have made a mistake as to Arvin's and Sim's identities; he claim[ed] he did not know their identities until April 2010. Lack of knowledge as to the proper defendant is not a mistake."); *Bradford v. Bracken Cnty.*, 767 F. Supp. 2d 740, 750 (E.D. Ky. 2011); *Dominguez v. City of New York*, No. 10 Civ. 2620(BMC), 2010 WL 3419677, at *3 (E.D.N.Y. Aug. 27, 2010) ("*Krupski* merely picks up where *Barrow* left off. *Barrow* asked whether a mistake has been committed; *Krupski* assumes the presence of a mistake and asks whether it is covered by Rule 15(c)(1)(C)(ii). Therefore, *Barrow*'s holding that a lack of knowledge is not a mistake is still intact."); *Burdine v. Kaiser*, No. 3:09CV1026, 2010 WL 2606257, at *2 & n.2 (N.D. Ohio June 25, 2010); *cf. Abdell v. City of New York*, 759 F. Supp. 2d 450, 456–57 (S.D.N.Y. 2010) (finding lack of knowledge regarding the conduct or liability of a party may be a mistake where the plaintiff is aware of the party); *but see Lippman v. City of Miami*, 719 F. Supp. 2d 1370, 1377 & n.8 (S.D. Fla. 2010).

Further evincing that there was no mistake here is the fact that Lelieve was provided an opportunity to discover the true identities of the Doe Defendants. (*See* May 5, 2011 Order). Although provided with discovery, and having been present in his own criminal trial where these Defendants would have been identified, Lelieve asserted he was "unsuccessful in obtaining" their names. (Request 1). Lelieve made an affirmative choice not to discover the Doe Defendants' identities.

Finally, Plaintiff's reliance on *Krupski* is misplaced in part because the Court in *Krupski* assumed a mistake and then asked whether it was covered under Rule 15. *See Krupski*, 130 S.

Ct. at 2493–94; *Dominguez*, 2010 WL 3419677, at *3 ("*Barrow* asked whether a mistake has been committed; *Krupski* assumes the presence of a mistake and asks whether it is covered by Rule 15(c)(1)(C)(ii)."). The issue here is whether a mistake occurred; Defendant Belfort opposes the amendment because he asserts there has been no mistake. (*See* Mot. Opp'n 5–6). Lelieve's arguments concerning whether he committed a mistake fail to persuade.

> Lelieve's complete explanation concerning whether or not he made a mistake is that:
>
>> Defendant Belfort's entire defense lies in the fact that he was not the officer who assaulted Plaintiff. In fact, it is ***because of Belfort's "mistake" defense***, that Plaintiff requires amending his pleadings to add other defendants to allow him to plead alternative claims against the other officers who were present during Plaintiff's arrest.

(Reply 3 (emphasis in original)). This does not sway the Court.

First, Lelieve does not truly seek to amend *because of* Belfort's assertions that it was not he who beat Plaintiff. This is confirmed because Plaintiff originally attempted to sue his arresting officers; he sued the Doe Defendants (i.e., the named Defendants now sought to be added) before Officer Belfort ever had an opportunity to say he was not present. Thus, Plaintiff did not sue the Doe Defendants because of Belfort's "mistake" defense. Rather, he tried to sue them from the start.

Second, Lelieve cites no case law supporting his position. There are plenty of cases stating a lack of knowledge (even post-*Krupski*) is not a "mistake" under Rule 15(c)(1)(C). Lelieve's unsupported assertion that because Officer Belfort said "it was not me" Lelieve has *ipso facto* made a "mistake" under Rule 15(c)(1)(C) fails to contradict that.

Third, to accept Lelieve's argument would be to wholly abrogate the "mistake" requirement. Under Lelieve's scenario, any time a defendant denied the allegations stated against him, this would automatically qualify as a mistake. In sum, Plaintiff simply has not met

10

his burden of demonstrating he made a "mistake." Without a mistake, the Court cannot proceed to the remaining requirements of Rule 15(c)(1)(C), such as whether the newly named Defendants were aware of this pending lawsuit.

Although on Plaintiff's asserted facts — that he was unaware of the Does' true identities — Plaintiff has not met his burden of demonstrating he made a "mistake," even assuming that Lelieve was aware of the correct Defendants' identities,[2] and while acknowledging "it would be error to conflate knowledge of a party's existence with the absence of mistake," *Krupski*, 130 S. Ct. at 2494, it is still apparent that Lelieve has not made a "mistake." As the Supreme Court noted, "[a] mistake is '[a]n error, misconception, or misunderstanding; an erroneous belief.'" *Krupski*, 130 S. Ct. at 2494 (quoting BLACK'S LAW DICTIONARY 1092 (9th ed. 2009)). The Supreme Court also "agree[d] that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Id.* The facts here demonstrate that Lelieve, if he had knowledge of the correct Defendants, made such a deliberate choice.

In his Complaint, Lelieve sued two John Doe Defendants. (*See* Compl.). These Doe Defendants were purportedly the detectives who arrested him. (*See id.* 1). When objecting to the Report of Magistrate Judge (*see* [ECF No. 23]), Lelieve sought leave to amend in order to name the John Doe Defendants. (*See* Obj. ¶ 2 [ECF No. 27]). The Court granted Lelieve the opportunity to amend his Complaint and replace the Doe Defendants with named parties. (*See*

---

[2] This assumption is, of course, in direct contradiction to Lelieve's own admission. (*See* Request 1). In the past, on the same set of operative facts, Lelieve has sought to sue Fernandez as well as other officers. *See, e.g.*, *Lelieve v. Fernandez*, 08-cv-21664-JLK (filed June 11, 2008); *Lelieve v. City of Miami Police*, 09-cv-20547-JAL (filed April 30, 2009). At the very least, it is apparent that Lelieve was aware of Fernandez and made a deliberate decision not to amend his Complaint to name him. (*See* Request 1).

May 5, 2011 Order, at 11 [ECF No. 28]). But instead of amending, Lelieve filed a request to proceed with his original Complaint, stating he was "unsuccessful in obtaining the names of Defendants John Doe #1 and John Doe #2." (Request 1). If he was aware of the Defendants' true identities (as indicated by previous case filings and as inferred from his criminal trial and appeal), and after being given the opportunity to amend and replace the Does Plaintiff decided to proceed with the original Complaint against Officer Belfort, that is a deliberate decision and not a mistake. This scenario would prevent relation back as well.

Finally, Lelieve seeks to have the Court equitably toll the statute of limitations. The Court addresses that contention following a discussion of *Heck v. Humphrey*.

### 2. *Heck v. Humphrey*

Officer Belfort also asserts that certain amendments are futile under *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* Mot. Opp'n 6). He states that to the extent Plaintiff's claims challenge his underlying conviction, they are barred by *Heck*. (*See id.*). Plaintiff readily admits he seeks to challenge his conviction. (*See* Reply 5–7).

Plaintiff's sixth claim in his proposed Amended Complaint is for malicious prosecution. (*See* Am. Compl. 13). "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck*, 512 U.S. at 484. "'[T]o permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit.'" *Id.* (quoting SPEISER, C. KRAUSE, & A. GANS, AMERICAN LAW OF TORTS § 28:5, p. 24 (1991)).

The Supreme Court has expanded this principle beyond malicious prosecution claims, stating:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding

> criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Id.* at 486. The Court then went on to hold that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486–87. It is now apparent that "a state prisoner's § 1983 claim is barred 'no matter the relief sought' and 'no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)' if success in that action would necessarily demonstrate the invalidity of his conviction or length of confinement." *Pugh v. Smith*, 333 F. App'x 478, 479–80 (11th Cir. 2009) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *Heck*, 512 U.S. at 487). If Plaintiff desires to challenge his conviction (which he clearly does), the proper vehicle is a petition for a writ of habeas corpus. *See Heck*, 512 U.S. at 481; *Blunt v. Gold*, No. 09-61320-CIV, 2009 WL 6478636, at *3 (S.D. Fla. Sept. 14, 2009).

In light of *Heck*'s admonition that a section 1983 claim may not be used to challenge the validity of a criminal judgment, Lelieve's attempts to assert claims for false arrest, false imprisonment, malicious prosecution, and conspiracy (claims IV through VII) must fail. In Lelieve's claim for false arrest, claim IV, he asserts he was wrongfully arrested because he did not possess cocaine. (*See* Am. Compl. ¶¶ 66–70). Lelieve asserts he was arrested solely to cover up Defendants' use of force. (*See id.* ¶ 66). Lelieve, however, was convicted of trafficking in cocaine. (*See* Judgment [ECF No. 12-2]). This claim therefore directly challenges the validity

of his criminal judgment and may not be pleaded.

Similarly, Lelieve's claim for false imprisonment, claim V, challenges the validity of his criminal judgment. Lelieve alleges he has been falsely imprisoned as a result of a cover-up. (*See* Am. Compl. ¶¶ 76–79). He maintains that as a result of his 2007 conviction, he has "been imprisoned against his will . . . ." (*Id.* ¶ 77). Of course, the only way he could be falsely imprisoned is if the underlying conviction were wrongful. If the conviction is valid, there is no false imprisonment. Therefore, it is apparent that this claim challenges the validity of the criminal judgment and may not be asserted.

Lelieve's claim for malicious prosecution, claim VI, is also barred under *Heck*. Finally, Lelieve's claim for conspiracy, claim VII, even though brought under 42 U.S.C. § 1985, also fails. "A plaintiff seeking relief based on the premise that he 'was the victim of an unconstitutional conspiracy to falsely convict him' is merely attempting to overturn his conviction and is barred by *Heck* from proceeding." *Pugh*, 333 F. App'x at 480 (quoting *Abella v. Rubino,* 63 F.3d 1063, 1064–66 (11th Cir. 1995)); *Davis v. Kennedy*, No. 1:10cv137-MHT, 2010 WL 2403077, at *3 (M.D. Ala. May 26, 2010) (finding plaintiff's section 1985 claim barred under *Heck* because the claim sought to overturn his conviction) (quoting *Pugh*, 333 F. App'x at 480). Here, Lelieve's conspiracy claim alleges the Defendants arrested him and he was ultimately convicted and imprisoned, not because of any crime he committed, but rather to justify their use of force. (*See* Am. Compl. ¶¶ 92–96). As a result of the conspiracy, Lelieve asserts he was falsely convicted. (*See id.* ¶ 94). Therefore, this claim fails under *Heck* because it seeks to challenge his underlying criminal judgment.

### C. Tolling

Finally, Lelieve asks the Court to apply equitable tolling. (*See* Reply 3–4). He seeks to

have his claims "tolled during the time his conviction and sentence has [sic] been challenged on appeal." (*Id.* 4). However, it appears Lelieve is not just asking that the statute of limitations be tolled, but rather that the entire case be stayed pending his ongoing challenges to his conviction and sentence.

Until Lelieve overturns his conviction, certain of his section 1983 claims have not yet arisen:

> We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. That makes it unnecessary for us to address the statute-of-limitations issue wrestled with by the Court of Appeals, which concluded that a federal doctrine of equitable tolling would apply to the § 1983 cause of action while state challenges to the conviction or sentence were being exhausted. . . . . Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

*Heck*, 512 U.S. at 489–90 (footnote call number and citations omitted). If Lelieve's conviction is overturned, certain claims' statutes of limitation will begin to run at that time. In other words, if Lelieve successfully overturns his conviction, he may be able sue the proposed Defendants because the statute of limitations, relation back, and *Heck* issues will disappear.

It may, however, take years for Lelieve to overturn his conviction. Officer Belfort, who has been involved in this case from the start, should not have to wait years to receive finality. Furthermore, without agreement of the parties, it is impermissible for the Court to stay the case for essentially an indeterminate period of time. *See King v. Cessna Aircraft Co.*, 505 F.3d 1160,

Case No. 10-23677-CIV-ALTONAGA/Simonton

1172–73 (11th Cir. 2007); *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264–65 (11th Cir. 2000).

## IV.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

The Motion **[ECF No. 62]** is **GRANTED in part** and **DENIED in part**.  Lelieve is directed to file an Amended Complaint that complies with this Order by **November 4, 2011**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of October, 2011.

                                                                     _____
                                                                     **CECILIA M. ALTONAGA**
                                                                     **UNITED STATES DISTRICT JUDGE**

cc:     counsel of record